IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**RICHARD WATTERS,**

    PLAINTIFF,

v.

**LOWE'S HOME CENTERS, LLC,**     **CASE NO.**
Foreign Limited Liability Company,

    DEFENDANT.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

PLAINTIFF, RICHARD WATTERS, ("WATTERS" or "Plaintiff"), sues DEFENDANT, LOWE'S HOME CENTERS, LLC, ("LOWE'S" or "Defendant") and alleges:

**NATURE OF CLAIMS**

1. This is an action under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., (FMLA); the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 621 et seq., 29 U.S.C, 215 et seq., (ADEA); and the Florida Civil Rights Act, Chapter 760, Florida Statutes (FCRA). The action includes claims for (1) Interference in violation of the FMLA, (2) Retaliation in violation of the FMLA, (3) Age Discrimination in violation of the ADEA, (4) Age Discrimination in violation of the FCRA, (5) Retaliation in violation of the ADEA, and (6) Retaliation in violation of the FCRA.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over WATTERS's State law claims because they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. Moreover, WATTERS's State law claims do not raise a novel or complex issue of State law nor do they substantially predominate over the ADEA and FMLA claims.

4. WATTERS is a resident and citizen of Lee County, Florida.

5. LOWE'S is a Foreign Limited Liability Company incorporated and maintaining its principal place of business in North Carolina.

6. LOWE'S operates, conducts, engages in, or carries on a business or business venture in Florida.

7. LOWE'S engages in substantial and not isolated activity within Florida.

8. At all times material hereto, LOWE'S owned, operated, and/or managed the LOWE'S store located at 10070 Estero Town Commons Place, Estero, FL 33928 ("Estero location").

9. WATTERS was employed by LOWE'S in Lee County. All unlawful employment practices alleged to have occurred herein took place in Lee County which is within the Middle District of Florida.

10. Venue is proper in the Middle District of Florida, Fort Myers Division because a substantial part of the events or omissions giving rise to the claim occurred in the judicial district.

## COVERAGE AND ELIGIBILITY

11. LOWE'S is a $22 billion retailer selling home improvement products and equipment in more than 800 stores nationwide. LOWE'S is the world's second largest home improvement retailer and the fourteenth (14th) largest retailer in the United States.

12. LOWE'S is authorized to do business in the State of Florida.

13. At all times material, LOWE'S employs 50 or more employees for each working day during each of 20 or more calendar workweeks. LOWE'S was an employer as defined by the FMLA, 29 U.S.C. §2611(4), and its interpretive regulations, 29 C.F.R. §825.102, §825.104(a) and §825.104(c)(2).

14. At all times material, WATTERS was employed by LOWE'S for at least 12 months and for at least 1,250 hours of service with LOWE'S during the previous 12-month period. WATTERS is an "Eligible Employee" as defined by the FMLA, 29 U.S.C. §2611(2) and its interpretive regulations, 29 C.F.R. §825.102 and §825.110.

15. At all times material hereto, LOWE'S had 20 or more employees who worked for the company in the current or preceding calendar year, and any agent of such a person. LOWE'S is an employer within the meaning of the ADEA and the FCRA.

## CONDITIONS PRECEDENT

16. WATTERS filed a timely Charge of Discrimination with the Florida Commission on Human Relations and the EEOC that was received on February 4, 2019.

17. WATTERS received a Notice of Right to Sue from the EEOC on December 12, 2019. This action is timely filed thereafter.

18. All other conditions precedent have occurred or been performed.

## STATEMENT OF FACTS

19. WATTERS is a sixty-year-old male and was well over the age of forty at the time of his employment and termination from LOWE'S.

20. WATTERS began working for LOWE'S in January of 2009 as an Assistant Manager.

21. WATTERS was later promoted and Managed Sales Specialists, Project Specialists Exterior, Project Specialists Interior, and Commercial Specialists.

22. WATTERS performed his assigned duties in a professional manner and was very well qualified for his position.

23. WATTERS consistently met and exceeded performance goals.

24. WATTERS was recognized for strong performance often and received several pay raises throughout his employment at LOWE'S.

25. In 2017, LOWE'S transferred Anthony Lennox, an individual in his thirties, to the Estero, Florida store where WATTERS worked. Mr. Lennox became Store Manager.

26. Mr. Lennox quickly developed a reputation in the store for mistreating his subordinates.

27. On May 22, 2018, Mr. Lennox surprised WATTERS with a Performance Improvement Plan (PIP) despite WATTERS's strong performance.

28. WATTERS protested the PIP and its contents, and Mr. Lennox even conceded to WATTERS that his performance was very good.

29. WATTERS had been keeping detailed records of his exemplary performance and made these records available to Mr. Lennox.

30. After the Plan was presented to WATTERS, Mr. Lennox continued to target and demean WATTERS notwithstanding his strong performance.

31. WATTERS's PIP was a sham, and WATTERS complained repeatedly to Human Resources about being targeted because of his age.

32. WATTERS's also continuously objected to Human Resources regarding the unlawful treatment he was receiving.

33. WATTERS's complaints and objections were acts of opposition to unlawful age discrimination.

34. Due to the high stress environment created by Mr. Lenox, WATTERS was diagnosed with Severe Hypertension on July 9, 2018, prescribed medicine, and ordered to rest at home for the next few weeks.

35. The next day, on July 10, 2018, WATTERS filed for protected time off under the Family Medical Leave Act (FMLA). More advanced notice was not practicable.

36. WATTERS submitted his FMLA request and subsequent requests to Reed Group, Ltd., an absence management services that coordinates FMLA requests on behalf of LOWE'S.

37. LOWE'S was provided with enough information to know that the leave may be covered by the FMLA.

38. WATTERS was informed that he met the eligibility requirements for protected time off under the FMLA and was granted leave until for the remainder of the month until July 31, 2018.

39. During a follow-up appointment with WATTERS's physician, WATTERS was ordered not to return to work until he could see a Cardiologist on August 9, 2019.

40. WATTERS requested an extension of his FMLA time off until August 12, 2018, to provide WATTERS time to see his physician after his appointment with the Cardiologist.

41. WATTERS's extension request was approved.

42. Based on the Cardiologist's findings, WATTERS's physician approved WATTERS's return to work intermittently with no more than forty hours worked over four days each week.

43. WATTERS filed for Intermittent FMLA leave with a reduced schedule for the dates of August 13, 2018, through October 5, 2018.

44. On August 13, 2018, WATTERS returned to work and was graciously welcomed by every employee he encountered, except Mr. Lennox.

45. Instead, Mr. Lennox scolded WATTERS for not informing him of his need for FMLA time off, to which WATTERS responded that he was assured by Reed Group, Ltd., that there was no need to contact Mr. Lennox directly regarding his FMLA time off because Reed Group, Ltd. would immediately inform Human Resources of his request.

46. Moreover, Mr. Lennox informed WATTERS that he would now share his job functions with David Franqui, an individual in his mid-thirties.

47. That same day, while reading through emails, WATTERS came across an email with the subject line "new line-up" and announced to all store management that WATTERS's position was being filled by Mr. Franqui. This email sent on July 27, 2018, while WATTERS was still on protected leave under the FMLA.

48. WATTERS continued to work a reduced schedule as ordered by his physician.

49. WATTERS even met with Human Resources at times to ensure the reduced schedule would not be a problem and that he would be compensated accordingly.

50. On September 6, 2018, WATTERS was abruptly terminated by Mr. Lennox. Mr. Lennox told WATTERS that he was being terminated for not holding Associates accountable.

51. This was false, as WATTERS had been holding Associates accountable and had provided Human Resources and Mr. Lennox documentation in support thereof.

52. Mr. Lennox knew that WATTERS had an excellent reputation throughout the store and was well respected as an effective leader.

53. Later that day, Mr. Lennox sent out an email to the management team stating:

> Team, Rick WATTERS is no longer with the company effective immediately. With discussion on the floor, please keep positive and shoot down any rumors. The [Assistant Store Manager] team will assist on any customers or situations he was currently working on. Any questions, please see Charlie [, the Human Resources Manager] or myself.

54. The following day, Mr. Lennox sent an email to all store employees that read in part:

> Team, I wanted to let you know that Rick WATTERS, [Assistant Store Manager] Sales has made the decision that he will leave LOWE'S. His last day was yesterday, September 6th. We thank Rick for his many contributions to the company and wish him well in the future.
>
> David Franqui will be taking over as your new [Assistant Store Manager] Sales.

55. This email sent to all store employees was false, as WATTERS did not make a decision to leave. He was terminated.

56. Moreover, WATTERS was replaced by an employee who was significantly younger than he was and had far less experience.

57. A week after he was terminated, WATTERS received a letter stating that his request for Intermittent FMLA time was denied. The reason provided was "Insufficient Certification."

58. In response to WATTERS's request for Intermittent FMLA leave, WATTERS was not notified that any additional certification or recertification was required.

59. Moreover, at no time was WATTERS given written notice stating that any additional information was necessary to make the certification complete and sufficient.

60. WATTERS was never provided notice that any certification previously provided was vague, unclear, or nonresponsive.

61. WATTERS was never instructed to provide additional certification or recertification within fifteen days.

## **COUNT I – FAMILY MEDICAL LEAVE ACT**

**(Interference with WATTERS's Exercise of FMLA Rights)**

62. WATTERS realleges and incorporates allegations 1-61.

63. WATTERS qualified for FMLA for his own serious health condition.

64. LOWE'S interfered with, restrained, or denied the exercise of or the attempted exercise of WATTERS's FMLA rights under 29 U.S.C. § 2615(a)(1) in one or more of the following ways:

   a. By failing to give WATTERS notice of eligibility and his rights under the FMLA;

   b. By failing to recognize WATTERS's FMLA leave and by failing to designate such leave as protected leave under the FMLA;

   c. By denying and/or failing to approve continuation of FMLA leave when it was available;

   d. By failing to restore WATTERS to his position at the expiration of his FMLA protected leave;

   e. By terminating WATTERS for using FMLA protected leave.

65. WATTERS has suffered damages as a result of the LOWE'S interference.

66. WATTERS has suffered damages as a result of the interference, is still suffering damages, and will continue to suffer damages in the future.

67. The degree of hostility and animosity between the parties, the displacement of an innocent employee, the probability of reinstatement arousing hostility in the workplace, and the effect of the dismissal, and the litigation process on WATTERS's feeling of self-worth and ability to return to work for the Defendants make reinstatement impracticable and inappropriate. Therefore, WATTERS is entitled to front pay through the date of his retirement as an alternative form of equitable relief.

68. LOWE'S interference was willful; furthermore, LOWE'S assertions to WATTERS regarding his FMLA rights or lack thereof were objectively unreasonable under 29 U.S.C. § 2617(a)(1)(A)(iii), which authorizes liquidated damages under such circumstances.

## COUNT II – FAMILY MEDICAL LEAVE ACT
### (Retaliation in Violation of the FMLA)

69. WATTERS realleges and incorporates allegations 1-61.

70. WATTERS availed himself of a protected right under the FMLA when he requested leave for his own serious health condition.

71. WATTERS engaged in statutorily protected activity when he took FMLA medical leave for his own serious health condition.

72. WATTERS suffered an adverse employment action when LOWE'S terminated WATTERS's employment on September 6, 2018.

73. WATTERS's termination was causally connected to his availment of a right under the FMLA.

74. WATTERS has suffered damages as a result of the retaliation, is still suffering damages, and will continue to suffer damages in the future.

75. The degree of hostility and animosity between the parties, the displacement of an innocent employee, the probability of reinstatement arousing hostility in the workplace, and the effect of the dismissal, and the litigation process on WATTERS's feeling of self-worth and ability to return to work for the Defendants make reinstatement impracticable and inappropriate. Therefore, WATTERS is entitled to front pay through the date of his retirement as an alternative form of equitable relief.

76. LOWE'S retaliation was willful; furthermore, LOWE'S decision to terminate WATTERS due to his availment of a right under the FMLA was objectively unreasonable per 29 U.S.C. § 2617(a)(1)(A)(iii), which authorizes liquidated damages under such circumstances.

## **COUNT III – AGE DISCRIMINATION IN EMPLOYMENT ACT**

**(Age Discrimination in Violation of the ADEA)**

77. WATTERS realleges and incorporates allegations 1-61.

78. WATTERS was an employee and LOWE'S was his employer covered by and within the meaning of the ADEA.

79. WATTERS is a member of the protected age class (over the age of forty) under the ADEA.

80. WATTERS was well qualified for the positions he held with LOWE'S.

81. Despite his qualifications, WATTERS suffered an adverse employment action in the form of termination.

82. A significantly younger person under the age of forty and less qualified replaced WATTERS.

83. LOWE'S discriminated against WATTERS in the terms and conditions of his employment on the basis of age, in violation of the ADEA.

84. LOWE'S engaged in unlawful employment practices in violation of the ADEA, 29 U.S.C. § 623, by terminating WATTERS because of his age.

85. LOWE'S either knew that its conduct violated the ADEA or it showed reckless disregard for whether its conduct violated the ADEA.

86. A causal connection exists between WATTERS age and his termination.

87. WATTERS has suffered damages as a result of the discrimination including lost wages, salary, employment benefits, and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate, and attorney's fees.

88. WATTERS is still suffering damages and will continue to suffer damages in the future.

89. The degree of hostility and animosity between the parties, the displacement of an innocent employee, the probability of reinstatement arousing hostility in the workplace, and the effect of the dismissal and the litigation process on WATTERS's feeling of self-worth and ability to return to work for the Defendants make reinstatement impracticable and inappropriate. Therefore, WATTERS is entitled to front pay through the date of his retirement as an alternative form of equitable relief.

90. LOWE'S violations of the ADEA were willful therefore WATTERS is entitled to liquidated damages under 29 U.S.C. § 626(b) (incorporating and modifying as to the ADEA, 29 U.S.C.A. § 216 of the Fair Labor Standards Act).

## COUNT IV – FLORIDA CIVIL RIGHTS ACT

**(Age Discrimination in Violation of Chapter 760, Florida Statutes)**

91. WATTERS realleges and incorporates allegations 1-61.

92. WATTERS was an employee and LOWE'S was his employer covered by and within the meaning of the FCRA.

93. WATTERS is a member of the protected age class (over the age of forty) under the FCRA.

94. WATTERS was well qualified for the positions he held with LOWE'S.

95. Despite his qualifications, WATTERS suffered an adverse employment action in the form of termination.

96. A significantly younger person who was under the age of forty and less qualified replaced WATTERS.

97. The above acts by LOWE'S constitute unlawful discrimination based on Plaintiff's age in violation of the Florida Civil Rights Act, Chapter 760, Florida Statutes.

98. As a direct, natural, proximate, and foreseeable result of LOWE'S discriminatory employment practices, WATTERS has suffered damages including, but not limited to, lost wages, front pay, interest on pay, bonuses, other benefits, emotional pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

99. WATTERS is still suffering damages and will continue to suffer damages in the future.

## COUNT V – AGE DISCRIMINATION IN EMPLOYMENT ACT

### (Retaliation in Violation of the ADEA)

100. WATTERS realleges and incorporates allegations 1-61.

101. Following WATTERS's repeated objections to age discrimination, LOWE'S retaliated by terminating WATTERS employment.

102. WATTERS's objection to age discrimination constituted a protected activity because such requests were in furtherance of rights secured to him by law.

103. Said protected activity was the proximate cause of LOWE'S adverse employment actions against WATTERS including termination.

104. Instead of ceasing its disparate treatment based upon age, LOWE'S retaliated against WATTERS via changed working conditions, discipline, and termination.

105. The acts of LOWE'S set forth above constitute retaliation in violation of the ADEA.

106. WATTERS has suffered damages as a result of the retaliation including lost wages, salary, employment benefits, and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate, and attorney's fees.

107. WATTERS is still suffering damages and will continue to suffer damages in the future.

108. The degree of hostility and animosity between the parties, the displacement of an innocent employee, the probability of reinstatement arousing hostility in the

workplace, and the effect of the dismissal and the litigation process on WATTERS's feeling of self-worth and ability to return to work for the Defendants make reinstatement impracticable and inappropriate. Therefore, WATTERS is entitled to front pay through the date of his retirement as an alternative form of equitable relief.

109. LOWE'S violations of the ADEA were willful therefore WATTERS is entitled to liquidated damages under 29 U.S.C. § 626(b) (incorporating and modifying as to the ADEA, 29 U.S.C.A. § 216 of the Fair Labor Standards Act).

## COUNT VI – FLORIDA CIVIL RIGHTS ACT
### (Retaliation Under Chapter 760, Florida Statutes)

110. WATTERS realleges and incorporates allegations 1-61.

111. WATTERS was an employee and LOWE'S was his employer covered by and within the meaning of the FCRA.

112. WATTERS is a member of the protected age class (over the age of forty) under the FCRA.

113. WATTERS was well qualified for the positions he held with LOWE'S.

114. WATTERS engaged in statutorily protected activity by voicing opposition and objecting to LOWE'S unlawful employment practices.

115. WATTERS suffered an adverse employment action.

116. The adverse employment action was causally related to the protected activity.

117. WATTERS was discharged from his employment by LOWE'S in retaliation for his complaints regarding unlawful employment practices and in retaliation for objecting to the unlawful employment practices.

118. As a direct, natural, proximate, and foreseeable result of LOWE'S retaliatory employment practices, WATTERS has suffered damages including, but not limited to, lost wages, front pay, interest on pay, bonuses, other benefits, emotional pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

119. WATTERS is still suffering damages and will continue to suffer damages in the future.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

## **PRAYER FOR RELIEF**

**WHEREFORE**, WATTERS respectfully requests the following relief under each count, unless otherwise specified:

a. Injunctive relief under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated above and enjoining Defendant from future violations of the laws enumerated above and providing other equitable relief to Plaintiff;

b. Back pay wages, salary, employment benefits, and all other compensation to which he is entitled (hereafter "back pay");

c. Front Pay as permitted by law;

d. Interest as permitted by law;

e. **As to Counts I, II, III, and V under the FMLA and ADEA**, liquidated damages in an amount equal to the sum of back pay and interest on back pay;

f. **As to Counts IV and VI under the FCRA**, compensatory damages for lost benefits, mental anguish, and other such relief in an amount to be determined at trial;

g. **As to Counts IV and VI under the FCRA**, punitive damages in an amount to be determined at trial;

h. Attorney's fees and costs, including expert witness fees as allowed by law;

i. All other legal and/or equitable relief to which she is entitled as a matter of law and/or equity;

j. Grant other further relief as being just and proper under the circumstances.

Respectfully submitted,

**LINDSAY & ALLEN, PLLC**
<u>/s/ *Victor R. Bermudez*</u>
Todd B. Allen, Esq.
Florida Bar No. 83990
Kelsey L. Hazzard, Esq.
Florida Bar No. 99795
Victor R. Bermudez, Esq.
Florida Bar No. 1010344
*Trial Counsel for Plaintiff*
13180 Livingston Road, Suite 206
Naples, FL 34109
(P) 239.593.7900 (F) 239.593.7909
todd@naples.law
kelsey@naples.law
victor@naples.law
nancy@naples.law
victoria@naples.law